## BALTIMORE CITY COURT

Filed June 20, 1899.

MAYOR AND CITY COUNCIL OF BALTIMORE

VS.

MONTICELLO DISTILLING COMPANY.

*Leon E. Greenbaum* for plaintiff.
*Wm. A. Fisher* for defendant.

DENNIS, J.—

It is a notorious fact that for many years distilled spirits wholly escaped State or municipal taxation. This was owing to the Government warehouse system, under which system the goods passed directly from the distiller to the warehouse, and were there kept until the Government taxes were paid and the distiller demanded their release. These goods were represented by warehouse receipts which were negotiable, passing the property from hand to hand by the delivery of the receipts. It is thus manifest that it was impossible for the State's officers ever to know in whom the title to these goods was vested, so that they could be made liable to taxation as other personal property.

To meet this situation the Act of 1892, Chapter 704, was passed. By the title to the act and the subsequent sections, it is very clear that the object of the law was to subject distilled spirits to taxation equally with all other personal property, but, owing to the difficulty of knowing who might be at the time the owners of the goods, the tax was imposed upon the distillers in whose names the property stood in the warehouse, and under whose control it was, subject to the rights of the Government for its charges, as custodians of the property. In furtherance of this scheme, by Section 2 of the Act, it was made the duty of the distiller and of the owner of the bonded warehouse in which the spirits were stored, and of every person or corporation having custody of the spirits, to make report to the State Tax Commissioner on the first day of January in each year of all the distilled spirits on hand at that date, and the taxes for the ensuing year from the said first day of January were required to be levied and paid on the amount of spirits so in hand.

Section 3 provided that the tax commissioner upon receiving said report should fix the value of the said spirits for the purpose of a taxation and should transmit a copy of said valuation to the Appeal Tax Court of Baltimore City and to the Board of County Commissioners of the counties where distilleries are situated, and then provided that all distilled spirits upon the valuation and return so made shall be subject to municipal and county taxation as all other personal property located within the bounds of any county, and the same section further provided that the county commissioners of counties where distilleries are situated and the Mayor and City Council of Baltimore are directed and required in making their annual levies, to impose upon the spirits so returned and valued by the State Tax Commissioner the State taxes as the same are prescribed by law. Section 8 provided that any warehouseman, custodian or agent paying the tax on distilled spirits herein provided for shall have a lien upon the distilled spirits covered by such tax.

It would thus seem clear that the object of the law was to impose the same tax upon distilled spirits as upon other personal property, and to charge the taxes against the custodian of the property owing to the necessity of the situation, giving this custodian, who was thus required to pay the taxes, a lien upon the property for whatever payments he may have been required to make, and that these taxes should be paid annually in accordance with the annual levies which were required to be made.

This construction would be free from difficulty but for some doubts that have been suggested, owing to the provisions of Section 4 and Section 5. Section 4 provides that it shall be the duty of the distiller, owner or custodian to make quarterly reports on the first days of January, April, July and October in each year, showing all the deliveries during the preceding current quarter from his custody or care of any part of the distilled spirits so reported, and that said delivery report shall be made to the Tax Commissioner of the State, who is directed to transmit a copy to the Appeal Tax Court and the County Commissioners, and also to the Collector or other proper officers to receive and collect taxes for the county and city in which such distillery is situated, and shall in each case along with said report to the collector "make a remittance in payment

of taxes upon such distilled spirits which shall be accounted for by said officer as any other county and State taxes are accounted for," and Section 5 provides that no distiller, custodian, etc., shall permit the same to go from his possession and control without the report and payment of the tax herein provided for, "and any person or corporation violating the provision of this section shall be proceeded against by the proper officer authorized to receive said tax by distraint for the entire amount of tax assessed for the current year, and thereupon all such taxes shall become and be immediately due and collectable by destraint, together with all costs attending the proceeding, and a further penalty of $500 for each such violation."

It is contended by the learned counsel for the defendant, that while the object of the law was to subject distilled spirits to the same tax as any other personal property, yet that the effect of Section 4 and of Section 5 was to postpone the right of the State to demand and receive these taxes, no matter at what time levied, until they should have been delivered from the bonded warehouse in the manner provided by those two sections. In other words, as under the United States warehouse system, the owner may keep the distilled spirits in the warehouse for the period of eight years, if he so wishes, that the tax levied for the first of the said years shall not be payable by said custodian or owner until they are delivered at the expiration of the period limited under the Government system.

This result would seem to be so incongruous and hostile to what is evidently the general scheme of the law as to forbid a construction by which it would be reached unless the Court was compelled to admit the conclusion by reason of the unmistakable language of the statute. But in my judgment Sections 4 and 5 properly construed do not mar or interfere in any degree with the general scheme provided for by the earlier sections of the act. Section 4 provides that these reports shall be made by the custodian of the property on the first days of January, April, July and October in each year, and then requires the payment of the taxes on all deliveries during the preceding *current quarter*.

This was intended to meet the case of goods put into the warehouse which stayed there less than a year; such, for instance, as spirits proper, high wines, which are very seldom kept in the warehouse for any length of time. Now as Section 2 provided that the proprietor or owner of the warehouse should make a report on the first day of January annually in each year of all the distilled spirits on hand at such date, and should pay the taxes on those thus in hand, it is clear that should goods go into the warehouse after the first of January, and after said report was made, and those goods should be removed prior to the next succeeding January, they would wholly escape taxation. It was to meet this suggestion that Sections 4 and 5 were enacted, which provide for these three months' deliveries, and in which the owner or distillery is required to pay the taxes for the whole of the ensuing year, the latter part of Section 2 expressly providing that the same distilled spirits shall not be taxed twice for the same year.

Thus, the tax under Section 4 would only apply, and was only intended to apply, to those goods which were stored after the January annual report, as provided for by Section 2.

It is further objected by the learned counsel for the defendant that the act is unconstitutional in that, it requires the distiller or the owner of the warehouse to pay this tax on property of which he is not the owner. But it is well settled that the custodian of personal property may be treated as the agent of the State to collect taxes levied by the State upon the property which is in his custody.

(See Cooley on Taxation, p. 373.)

Nor does this requirement under the law under consideration so seriously or injuriously affect the distiller as to render it unconstitutional. It may impose inconvenience upon him, but he is secured by the express provision of the act for any payment that he may have made on account of these taxes by being given a lien for his advances, a true construction of which provision would also undoubtedly carry an allowance to him of interest on such advances.

But it is hardly worth while to consider this phase of the case further,

because under a law precisely similar in all substantial particulars, the Supreme Court of Kentucky has held there is no constitutional difficulty. (See Commonwealth vs. Taylor Company, 41 Southwestern Reporter, p. 11; Commonwealth vs. Gaines & Co., 80 Kentucky, p. 489.) The former case seems to me to be conclusive on the constitutional questions raised.